[Cite as *State v. Jackson*, 2015-Ohio-4356.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 27478 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| TRAVASKI JACKSON | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No.   CR 2013 10 2869 (D) |

DECISION AND JOURNAL ENTRY

Dated: October 21, 2015

SCHAFER, Judge.

{¶1} Defendant-Appellant, Travaski Jackson, appeals from his convictions and sentence in the Summit County Court of Common Pleas. We affirm in part, reverse in part, and remand.

I.

{¶2} This case involves a plot between four individuals, Katrina Collins, Shyann Cherry, Tyree Feaster, and Jackson, to rob a single victim, D.C. Collins and Cherry were acquaintances of the victim, knowing him to be an individual who carried large amounts of cash.

{¶3} On October 5, 2013, the four individuals planned to rob the victim at his apartment in Akron, Ohio. The testimony elicited at trial reveals that two of the individuals, Collins and Cherry, made plans to visit the victim at his apartment on the night of the robbery. When the two women arrived at the victim's apartment, the three of them initially sat in the apartment's downstairs living room watching a football game on television. The women

eventually went upstairs to the victim's bedroom, and the victim followed them soon thereafter. At some point, Cherry went back downstairs and unlocked the front door to the apartment.

{¶4} While the victim was upstairs in his bedroom talking with the two females, two masked men wearing hooded sweatshirts and brandishing firearms entered the apartment, walked upstairs, and pointed their firearms at the victim. The masked men, now known to be Jackson and Feaster, demanded money and drugs. Jackson then pistol whipped the victim in the head. The victim testified that he saw one of the men appear to strike one of the women with his firearm, but thought that this was staged. He further testified that the men also pretended to rob the two women.

{¶5} The masked men then took the victim downstairs. Still holding him at gunpoint, Jackson ordered the victim into his own car. Leaving Feaster and the two women behind, Jackson drove the victim around the city in search of more money. While sitting in the front passenger seat, the victim was able to text his sister, informing her that he had been kidnapped and where he was located. Later, a police cruiser approached the car and shone a spotlight into the vehicle. At this time, Jackson exited from the vehicle and fled on foot, leaving the victim behind. In all, the masked men stole shoes and designer clothes from the victim, as well as the victim's television and $3,500.00 in cash.

{¶6} That night, based upon the victim's statements to the police along with his phone records, the Akron Police Department contacted Collins inquiring about the robbery. Collins agreed to speak with the police about the incident. Collins went to the police station, confessed to her role in the robbery, and identified Jackson and Feaster in a photo array as being the masked men during the robbery.

{¶7}    The grand jury indicted Jackson on one count of aggravated burglary in violation of R.C. 2911.11(A)(2), one count of aggravated robbery in violation of R.C. 2911.01(A)(1), one count of kidnapping in violation of R.C. 2905.01(A)(1), and one count of having weapons while under disability in violation of R.C. 2923.13(A)(2).    The aggravated burglary, aggravated robbery, and kidnapping counts also carried separate firearm specifications in violation of R.C. 2941.145.   The matter proceeded to trial, after which the jury convicted Jackson on all counts and specifications.

{¶8}    The trial court subsequently sentenced Jackson to five years on the aggravated burglary count, eight years on the aggravated robbery count, eight years on the kidnapping count, and three years on the having weapons while under disability count.  The trial court also imposed a three-year prison term for each firearm specification.  The trial court ordered that the sentences for Jackson's aggravated burglary, aggravated robbery, and kidnapping convictions run consecutively.   It also ordered that the sentences for the firearm specifications to Jackson's aggravated burglary and kidnapping convictions run consecutively.   The sentences for the remaining firearm specification on the aggravated robbery count and Jackson's conviction on having weapons while under disability were ordered to run concurrently.  As a result, the trial court imposed a total prison term of 27 years.

{¶9}    Jackson timely appeals from his convictions and sentence, raising five assignments of error for our review.

## II.

### Assignment of Error I

**Appellant was denied the constitutional right to counsel because lead counsel previously represented a key witness against appellant and the trial court failed to obtain a valid waiver as required by *State v. Gillard*.**

{¶10}  In his first assignment of error, Jackson argues that his Sixth Amendment right to effective assistance of counsel was violated because his lead attorney had previously represented his co-defendant, Shyann Cherry, who testified on behalf of the State.  We disagree.

{¶11}  The Sixth Amendment right to the effective assistance of counsel secures to a criminal defendant both the right to competent representation and the right to representation that is free from conflicts of interest.  *Wood v. Georgia,* 450 U.S. 261, 271 (1981).  "[T]he United States Constitution is violated by an actual conflict of interest, not a possible one."  *State v. Gillard*, 78 Ohio St.3d 548, 552 (1997).  As a result, "[w]hen a possible conflict of interest exists, a defendant is entitled only to an inquiry by the trial court."  *Id*.

{¶12}  A possibility of a conflict exists if the "'interests of the defendants may diverge at some point so as to place the attorney under inconsistent duties.'"  *State v. Dillon,* 74 Ohio St.3d 166, 168 (1995), quoting *Cuyler v. Sullivan*, 446 U.S. 335, 356, fn. 3 (1980).  An actual conflict of interest "exists if, 'during the course of the representation, the defendants' interests do diverge with respect to a material factual or legal issue.'"  *Id.* at 169, quoting *Cuyler* at 356; *accord, Gillard* at 552.  The Ohio Supreme Court has held that "a lawyer represents conflicting interests 'when, on behalf of one client, it is his duty to contend for that which duty to another client requires him to oppose.'"  *Gillard* at 553, quoting *State v. Manross*, 40 Ohio St.3d 180, 182 (1997).

{¶13}  An "actual conflict of interest," for purposes of the Sixth Amendment, is "a conflict of interest that adversely affects counsel's performance."  *Mickens v. Taylor,* 535 U.S. 162, 172, fn. 5 (2002); *see also Gillard* at 552.  Thus, to prove an "actual conflict of interest," the defendant must show that his counsel "actively represented conflicting interests," and that the conflict "actually affected the adequacy of his representation."  *Id*. at 166, 171, quoting *Cuyler* at

348–349. In order to show such a conflict, a defendant must "'point to specific instances in the record to suggest an actual conflict or impairment of [his] interests.'" *United States v. Hall,* 200 F.3d 962, 965–66 (6th Cir.2000), quoting *Thomas v. Foltz,* 818 F.2d 476, 481 (6th Cir.1987) (internal quotation omitted). An "adverse effect" is established where the defendant points to "some plausible alternative defense strategy or tactic [that] could have been pursued, but was not because of the actual conflict impairing counsel's performance." *Perillo v. Johnson,* 205 F.3d 775, 781 (5th Cir.2000) (internal quotation omitted); *see also Gillard* at 553. While it is not necessary to prove that the defense theory would have been successful, it is necessary to show that the alternative theory was viable. *Gillard* at 553. Additionally, an appellant "'must establish that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests.'" *Id.*, quoting *United States v. Fahey*, 769 F.2d 829, 836 (1st Cir.1985).

{¶14} In this case, Jackson's trial counsel informed the trial court during a sidebar at trial that she was initially appointed to represent both Jackson and Cherry at the beginning of the case. Trial counsel also informed the court that she immediately withdrew from representing Cherry upon learning of this potential conflict and that she has never represented Cherry on any prior case. The trial court then conducted an inquiry after hearing about this potential conflict of interest. During this inquiry, trial counsel assured the trial court that she and Jackson had "talked at length" when the potential conflict first arose. After the trial court informed Jackson about the potential conflict, Jackson waived any potential conflict of interest. Jackson then reasserted his waiver when the trial court inquired further to ensure that he understood the potential conflict.

{¶15} However, the record indicates that Jackson did not object at trial. Because Jackson did not object to his attorney representing Cherry previously, Jackson bears the burden

of demonstrating that an actual conflict of interest adversely affected his counsel's performance. *Cuyler* at 348. On appeal, Jackson merely points out that Cherry, his co-defendant turned State's witness, provided testimony that was beneficial to the prosecution. Such an argument, however, fails to satisfy the requisite two-part showing required by *Gillard*. As such, we determine that Jackson has failed to demonstrate the existence of an actual conflict of interest in this matter.

{¶16} Lastly, Jackson contends that his waiver of the conflict of interest was insufficient. However, because Jackson has failed to show the existence of an actual conflict of interest, we need not address the adequacy of his oral waiver before the trial court.

{¶17} Jackson's first assignment of error is overruled.

### Assignment of Error II

**The trial court erred in overruling the objection to the introduction of evidence of a prior felony conviction in the State's case in chief, pursuant to *Old Chief v. United States*.**

{¶18} In his second assignment of error, Jackson argues that the trial court erred by permitting the State to introduce evidence of his prior robbery conviction. Specifically, he maintains that this evidence constituted impermissible "other acts" evidence under Evid.R. 404(B). We disagree.

{¶19} The trial court possesses broad discretion in determining the admission of evidence. *State v. Maurer,* 15 Ohio St.3d 239, 265 (1984). "As such, this court will not overturn a trial court's evidentiary determination in the absence of an abuse of discretion that resulted in material prejudice to the defendant." *State v. Myers,* 9th Dist. Summit No. 25737, 2012–Ohio–1820, ¶ 9. An abuse of discretion "implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219 (1983).

**{¶20}** Evid.R. 404(B) precludes the admission of evidence related to the defendant's prior criminal acts when such evidence is offered to prove the defendant's character and that his actions were in conformity with that character. The rule, however, does allow this evidence "for other purposes." "[T]he listed exceptions [in Evid.R. 404(B)] are not exclusive, and other acts evidence not fitting within the enumerated categories may be admissible so long as it is admitted for any proper purpose other than proving the defendant's propensity to act in conformity with a particular trait of his character." *Myers* at ¶ 10, citing *State v. Smith,* 49 Ohio St.3d 137, 140 (1990). "This Court has held that '[w]hen a prior conviction is an element of the charged offense, it may be admitted into evidence for the purpose of proving that element." *State v. Rodriguez,* 9th Dist. Summit No. 26858, 2014–Ohio–911, ¶ 4, quoting *State v. Halsell,* 9th Dist. Summit No. 24464, 2009–Ohio–4166, ¶ 13; *see also Myers* at ¶ 11.

**{¶21}** Here, Jackson was convicted on having weapons while under disability in violation of R.C. 2923.13(A)(2), which relevantly provides that "no person shall knowingly have, carry, or use any firearm, if * * * [t]he person * * * has been convicted of any felony offense of violence[.]" Under the plain terms of the statute, an essential element of having weapons while under disability is that the offender has a previous conviction for a felony offense of violence. As a result, the State had to prove this element and we conclude that the trial court did not abuse its discretion in permitting the State to introduce evidence of his prior robbery conviction. *See State v. Horne*, 9th Dist. Summit No. 25238, 2011-Ohio-1901, ¶ 10 ("The trial court did not abuse its discretion by admitting testimony regarding the fact of [the defendant]'s conviction because it was relevant and necessary to proving a necessary element of the charge of having weapons while under disability.").

**{¶22}** In support of his argument, Jackson cites to *Old Chief v. United States*, 519 U.S. 172 (1997). In that case, the defendant was charged with violating 18 U.S.C. 922(g)(1), which prohibits convicted felons from possessing a firearm. The prosecution in that case refused to accept the defendant's proposed stipulation that he had a prior conviction. The United States Supreme Court held that "a district court abuses its discretion if it spurns such an offer and admits the full record of a prior judgment, when the name or nature of the prior offense raises the risk of a verdict tainted by improper considerations, and when the purpose of the evidence is solely to prove the element of prior conviction." *Id.* at 174. However, *Old Chief* is inapplicable in this case for two reasons. First, Jackson neither stipulated to nor offered to stipulate to his prior robbery conviction. And second, "this Court has consistently declined to adopt the holding in *Old Chief*." *State v. Inman*, 9th Dist. Medina No. 13CA0074-M, 2014-Ohio-3538, ¶ 10, citing *Rodriguez* at ¶ 8.

**{¶23}** Jackson's second assignment of error is overruled.

### Assignment of Error III

**The prosecutor's repeated emphasis on the agreement with the State's witnesses to provide "truthful testimony" improperly bolstered the credibility of the witnesses.**

**{¶24}** In his third assignment of error, Jackson argues that he was denied his right to a fair trial because the prosecutor repeatedly made statements and asked questions that were designed to bolster the credibility of the State's witnesses. According to Jackson, the prosecutor's remarks and inquiries constitute prosecutorial misconduct. We disagree.

{¶25} In this case, the State offered Collins and Cherry a deal[1] in exchange for their truthful testimony against their codefendant, Jackson, during his trial. While the State promised nothing concrete in terms of a recommended sentence, the State agreed to take the women's cooperation into account at the time of their respective sentencing hearings. Jackson argues that statements regarding this agreement improperly bolstered the witnesses' credibility. Specifically, he points to the prosecutor's opening statement in which he told the jury that he offered two of the State's witnesses a deal "to cooperate and to testify truthfully against [Jackson]." Moreover, Jackson identifies one instance where the prosecutor asked the victim about the veracity of his testimony, nine instances where the prosecutor inquired about Collins' truthfulness, and five instances where the prosecutor inquired about Cherry's truthfulness.

{¶26} "The test for prosecutorial misconduct is whether remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused." *State v. Cornwell*, 86 Ohio St.3d 560, 570 (1999). "The touchstone of analysis 'is the fairness of the trial, not the culpability of the prosecutor.'" *Id.* at 570-71, quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982). In deciding whether to reverse a conviction based upon improper statements, an appellate court must review the claim against the entire record and determine whether the alleged prosecutorial misconduct deprived the defendant of a fair trial. *State v. Jenks*, 61 Ohio St.3d 259, 281 (1991). In this case, defense counsel never objected to any of the statements or questions giving rise to Jackson's claim of prosecutorial misconduct. As such, the issue is forfeited except for plain error that would affect the outcome of the trial. *Cornwell* at 570, citing *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph two of the syllabus. In order for this Court to

---

[1] Collins and Cherry were also charged for their respective roles in the robbery of the victim. Both women, however, pled guilty to aggravated robbery and the State dropped the remaining counts. Both women testified against Jackson at his trial before they were sentenced.

apply Crim.R. 52(B), it must be clear that the outcome of the trial would have been different but for the alleged error. *See State v. Lane*, 108 Ohio App.3d 477, 482 (1st Dist.1995).

{¶27} Here, we determine that the prosecutor's statements regarding the veracity of the State's witnesses during opening argument did not constitute prosecutorial misconduct that deprived Jackson of a fair trial. During opening argument, the prosecutor informed the jury that the State offered witnesses a deal "to cooperate and to testify truthfully against [Jackson]." However, "attorneys are generally afforded wide latitude in opening statements, so long as the matters referred to can be shown by competent or admissible evidence." *State v. Zack*, 9th Dist. Lorain Nos. 99CA007321, 98CA007270, 2000 WL 763329, * 7 (June 14, 2000), citing *Columbus v. Hamilton*, 78 Ohio App.3d 653, 657 (10th Dist.1992), citing *Maggio v. Cleveland*, 151 Ohio St. 136 (1949), paragraph two of the syllabus. "Moreover, '[n]ot every comment by counsel can be a basis for reversal.'" *Id*., quoting *State v. Frazier*, 73 Ohio St.3d 323, 341 (1995). We conclude that the prosecutor's statement during opening argument did not rise to the level of plain error.

{¶28} Additionally, we determine that the prosecutor's inquiries regarding the veracity of the State's witnesses during direct examinations of the victim, Collins, and Cherry did not prejudicially affect Jackson's substantial rights. Jackson avers that because no other evidence exists linking him to the crimes except for the testimony of these witnesses, the cumulative effect of the prosecutor's questions was prejudicial. However, we cannot conclude that the jury's verdict would have been different but for the prosecutor's inquiries. *See Cornwell* at 571 ("[T]he jury might well have believed all three witnesses' testimony even if the prosecutor had not asked questions concerning the plea agreement made in exchange for 'truthful testimony.'"). Besides the testimony of Collins and Cherry, the State also introduced inculpatory evidence at trial in the

form of phone call records and text messages between Jackson, Collins, and Cherry that linked Jackson to the robbery. Therefore, we conclude that the prosecutor's questions regarding the veracity of the State's witnesses were not improper and did not prejudicially affect substantial rights of Jackson.

{¶29} Jackson's third assignment of error is overruled.

### Assignment of Error IV

**The trial court erred in imposing consecutive sentences for crimes against a single victim that the trial court never stated whether or not the crimes should merge.**

{¶30} In his fourth assignment of error, Jackson argues that the trial court erred by imposing consecutive sentences without first addressing his argument at the sentencing hearing that the offenses were allied. We agree.

{¶31} We note at the outset that Jackson does not ask this Court to review whether any or all of the offenses for which he was convicted are allied offenses of similar import. Rather, Jackson assigns as error the trial court's failure to make an explicit finding regarding the merger issue prior to imposing consecutive sentences. We therefore confine our analysis to this issue.

{¶32} The Ohio Supreme Court has held that when determining whether offenses are allied offenses of similar import, "courts must evaluate three separate factors—the conduct, the animus, and the import." *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, paragraph one of the syllabus The Court has further described the test for allied offenses of similar import as follows:

> If any of the following is true, the offenses cannot merge and the defendant may be convicted and sentenced for multiple offenses: (1) the offenses are dissimilar in import or significance—in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, and (3) the offenses were committed with separate animus or motivation.

*Id.* at ¶ 25.

**{¶33}** After reviewing the record, we determine that the trial court made no finding as to whether Mr. Jackson committed the offenses separately, with a separate animus, or whether the offenses are of dissimilar import. Absent such a finding, we determine that the trial court erred by separately sentencing Mr. Jackson on the aggravated burglary, aggravated robbery, kidnapping, and having weapons while under disability offenses. *See State v. Philpot*, 145 Ohio App.3d 231, 240 (12th Dist.2001) We therefore reverse appellant's sentences and remand this matter to the trial court for resentencing for the purpose of determining whether the offenses for which Mr. Jackson was convicted should merge.

**{¶34}** Mr. Jackson's fourth assignment of error is sustained.

### Assignment of Error V

**The trial court erred by imposing consecutive sentences without announcing at the sentencing hearing which finding required the sentences be served consecutively as mandated by *State v. Bonnell*.**

**{¶35}** In his fifth assignment of error, Mr. Jackson argues that the trial court erred by sentencing him to consecutive sentences without properly going through the analysis contained in R.C. 2929.14(C)(4). In light of our disposition of the fourth assignment of error, Mr. Jackson's fifth assignment of error is moot and we decline to address it. *See* App.R. 12(A)(1)(c); *see also State v. Bryant*, 10th Dist. Franklin No. 12AP-703, 2013-Ohio-5105, ¶ 22 ("[I]n light of our determination that this matter be remanded to the trial court for re-sentencing in order for the trial court to * * * determine whether the offenses are subject to merger, the issue as to error by the court in failing to make the requisite statutory findings before imposing consecutive sentences is rendered moot."). On remand, if the trial court determines that the offenses do not merge, the trial court must then determine whether consecutive sentences are appropriate,

pursuant to R.C. 2929.14(C)(4), and make necessary findings for the imposition of consecutive sentences.

## III.

**{¶36}** Mr. Jackson's first, second, and third assignments of error are overruled. Mr. Jackson's fourth assignment of error is sustained and his fifth assignment of error is moot. Accordingly, the judgment of the Summit County Court of Common Pleas is affirmed in part, reversed in part, and this matter is remanded for further proceedings consistent with this opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

JULIE A. SCHAFER
FOR THE COURT

HENSAL, P. J.
CARR, J.
CONCUR.

APPEARANCES:

DONALD GALLICK, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.