[Cite as *State v. Diestler*, 2018-Ohio-5263.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | | |

STATE OF OHIO

    Appellee

    v.

JEREMY DIESTLER

    Appellant

C.A. No.     17CA011106

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    14CR090307

DECISION AND JOURNAL ENTRY

Dated: December 28, 2018

---

CARR, Judge.

{¶1} Defendant-Appellant, Jeremy Diestler, appeals from his convictions in the Lorain County Court of Common Pleas. This Court affirms in part, reverses in part, and remands for further proceedings.

I.

{¶2} Late one evening, Diestler arranged to meet M.S. at M.S.'s apartment complex. Diestler had been purchasing heroin from M.S. for some time and, earlier that day, had notified M.S. that he wished to make another purchase. Diestler contacted M.S. as he neared his apartment complex, and M.S. walked downstairs to meet him. M.S.'s fiancée and friend were with him at the time and remained in the apartment while he went to meet Diestler.

{¶3} Shortly after M.S. left, his fiancée and friend heard gunfire. The two remained inside, but the neighbor across the hall wanted to see what was happening. Unbeknownst to her, Diestler was standing by the foot of the stairs because he was in the process of shooting M.S. As

the neighbor opened her door and stepped out, Diestler repeatedly fired up the stairs and shot her in the shoulder. The neighbor then darted back inside, and Diestler fled the scene.

{¶4} M.S.'s body was discovered on the stairs of his apartment complex. He sustained a total of ten gunshot wounds, five of which penetrated his torso and five of which penetrated his head. The five torso wounds were inflicted with an AR-10 rifle from a distance of approximately seventy feet. Meanwhile, the five head wounds were inflicted with a .9mm semiautomatic from a distance of approximately seven feet. Both guns were discovered at Diestler's mother's house the day after the shooting and were traced to his father. When the police arrested Diestler, they also found blood on his shoes and two rifle casings in his pocket. DNA testing confirmed that the blood on his shoes was consistent with M.S.'s DNA. Ballistics testing confirmed that the rifle casings in his pocket had been expelled from the rifle used to shoot M.S.

{¶5} Diestler was indicted on one count of aggravated murder, two counts of murder, three counts of felonious assault, one count of improperly discharging a firearm, one count of tampering with evidence, and eight attendant firearm specifications. He retained counsel, but his choice of counsel ultimately prompted the State to notify the court of a potential conflict of interest. Because Diestler's counsel had been representing M.S. on drug trafficking charges at the time of his death, the State asked the court to hold a conflict hearing and determine whether Diestler's counsel ought to be disqualified. Following a brief hearing on the matter, the court determined that no conflict existed.

{¶6} The matter proceeded to trial, and the jury found Diestler guilty on all counts. The court merged several of his counts as allied offenses of similar import and sentenced him to life in prison with parole eligibility after 41 years.

{¶7} Diestler now appeals from his convictions and raises five assignments of error for our review. For ease of analysis, we reorder and consolidate several of the assignments of error.

II.

**ASSIGNMENT OF ERROR I**

APPELLANT SUFFERED A DEPRIVATION OF THE CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WHEN THE TRIAL COURT PERMITTED THE VICTIM'S PRIOR ATTORNEY TO REPRESENT APPELLANT AT TRIAL.

{¶8} In his first assignment of error, Diestler argues that he was denied his right to counsel and received ineffective assistance of counsel because his retained counsel had a conflict of interest. For the following reasons, we reject his assignment of error.

{¶9} "The Sixth Amendment right to assistance of counsel embraces the correlative right to representation that is free from conflicts of interest." *State v. Worrell*, 9th Dist. Summit Nos. 23378, 23409, 2007-Ohio-70584, ¶ 23. "In order to establish a Sixth Amendment violation due to a conflict of interest, a defendant who failed to object at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *State v. Gillard*, 78 Ohio St.3d 548, 552 (1997), citing *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980). The mere possibility that a conflict might have affected his counsel's performance will not suffice. *Cuyler* at 350. Instead, "[the] defendant must 'point to specific instances in the record to suggest an actual conflict or impairment of [his] interests.'" *State v. Jackson*, 9th Dist. Summit No. 27478, 2015-Ohio-4356, ¶ 13, quoting *United States v. Hall*, 200 F.3d 962, 965-966 (6th Cir.2000). When a defendant contends that a conflict led to inaction on the part of his counsel, he must show

> that "some plausible alternative defense strategy or tactic might have been pursued. He need not show that the alternative defense would necessarily have been successful if it had been used, but that it possessed sufficient substance to be

a viable alternative. Second, he must establish that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests."

*Gillard* at 553, quoting *United States v. Fahey*, 769 F.2d 829, 836 (1st Cir.1985). "[W]hether an actual conflict of interest existed is a mixed question of law and fact, subject to de novo review on appeal." (Emphasis omitted.) *Gillard* at 552.

{¶10} At trial, Diestler never claimed to have suffered a Sixth Amendment violation due to a conflict of interest. Indeed, when the court held a conflict hearing at the State's request, retained counsel informed the court that Diestler knew M.S. was his former client and was willing to waive any conflict in that regard. Diestler now argues, however, that the court erred by not disqualifying his retained counsel due to that same conflict. Diestler asserts that retained counsel failed to work diligently on his case during discovery and "did not seem to offer much [of a] defense" at trial. He also asserts that retained counsel "failed to object to numerous irregularities" in the proceedings. As such, he argues that his right "to effective assistance of counsel, and conflict-free counsel, was denied * * *."

{¶11} Because Diestler did not raise a conflict of interest objection at trial, he now must show "that an actual conflict of interest adversely affected his lawyer's performance." *Gillard* at 552. Yet, his argument only consists of general criticisms of his counsel's performance. He has not pointed to any specific instances that would suggest an *actual* conflict. *See Jackson* at ¶ 13, quoting *Hall* at 965-966. Nor has he offered any alternative defense strategy that, but for the alleged conflict, his counsel might have pursued on his behalf. *Compare State v. Mohrman*, 9th Dist. Lorain No. 02CA008053, 2002-Ohio-6610, ¶ 15-16. The evidence against Diestler was compelling, given that he arranged a meeting with M.S., had possession of the guns used to kill him, had his blood on his shoes, and had shell casings that were fired from one of the murder

weapons in his pocket. Even so, retained counsel argued zealously on Diestler's behalf and, over the State's objection, secured lesser-included offense instructions on voluntary manslaughter and aggravated assault. This Court will not overturn Diestler's convictions due to the mere possibility that his counsel's attorney-client relationship with M.S. might have affected his performance. *See Cuyler* at 350. Because Diestler has not shown that an actual conflict of interest adversely affected his counsel's performance, we reject his argument. *See State v. Spaulding*, 9th Dist. Summit No. 28526, 2018-Ohio-3663, ¶ 77.

{¶12} To the extent Diestler contends that he received ineffective assistance of counsel for reasons unrelated to his counsel's alleged conflict, we likewise reject his argument. An appellant will prevail upon an ineffective assistance argument only if he shows that "counsel's performance fell below an objective standard of reasonableness and that prejudice arose from counsel's performance." *State v. Reynolds*, 80 Ohio St.3d 670, 674 (1998), citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Properly licensed attorneys enjoy a presumption of competence, *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, ¶ 62, and prejudice will lie only if "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph three of the syllabus.

{¶13} Diestler contends that his counsel was ineffective because he failed to diligently work on his case during discovery. He offers, as proof of a lack of diligence, a pretrial statement from the prosecutor indicating that defense counsel had failed to produce any discovery in 14 months. Defense counsel responded at that time, however, that he had no additional discovery to produce. The State produced a wealth of discovery in this matter, and it was defense counsel's position that the case consisted of that discovery. Diestler has not explained what, if any,

additional discovery he believes defense counsel ought to have produced. *See* App.R. 16(A)(7). Further, the record reflects that defense counsel pursued and prevailed upon a motion to suppress during the timeframe Diestler claims he was failing to work diligently. Because Diestler has not proven his lack of diligence claim, we reject that portion of his ineffective assistance of counsel argument.

{¶14} Diestler also contends that his counsel was ineffective because he "did not seem to offer much [of a] defense" at trial. As noted, however, the evidence against Diestler was compelling, and he has not offered any plausible alternative defense strategy that counsel might have raised. The evidence was such that Diestler first shot M.S. from about seventy feet away, so there was no basis to assert a claim of self-defense. *See State v. Robbins*, 58 Ohio St.2d 74 (1979), paragraph two of the syllabus. Moreover, the evidence was such that Diestler arranged their meeting, arrived with a rifle and a .9mm, and shot M.S. ten times shortly after M.S. arrived to meet him. It was defense counsel's theory that Diestler was addicted to heroin and shot M.S. in a fit of rage only after M.S. took his money and refused to supply him with quality heroin. By pursuing the foregoing theory, defense counsel was able to secure lesser-included offense instructions on voluntary manslaughter and aggravated assault so as to give the jury alternatives to finding Diestler guilty of aggravated murder and felonious assault. Even if that theory was debatable, "debatable trial strategies do not constitute ineffective assistance of counsel." *State v. Shirley*, 9th Dist. Summit No. 20569, 2002 WL 5177, *7 (Jan. 2, 2002). Upon review, we reject Diestler's ineffective assistance of counsel argument insofar as it concerns the defense his counsel presented at trial.

{¶15} Lastly, Diestler contends that his counsel was ineffective because he "failed to object to numerous irregularities" in the proceedings. Though he claims the irregularities were

"numerous," he cites only two. First, he faults counsel for not objecting when the judge spoke to the jury in private about the verdict forms and asked them to remove a not guilty finding. Second, he faults counsel for speaking on his behalf at sentencing and for not objecting when the court deprived him of his right to allocution. As detailed in this Court's discussion of assignments of error two and three, Diestler has not shown that the trial judge spoke privately with the jury or instructed them to disregard a particular verdict. *See* Discussion, *infra*. Because the record does not support his assertion in that regard, we reject that portion of his argument. With respect to Diestler's allocution argument, the record supports the conclusion that this matter must be remanded for resentencing. *See* Discussion, *infra*. Based on our resolution of Diestler's fifth assignment of error, this portion of his ineffective assistance of counsel argument is moot, and we decline to address it. *See* App.R. 12(A)(1)(c). Diestler's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE CONVICTION FOR AGGRAVATED MURDER IS A VIOLATION OF THE STATE AND FEDERAL CONSTITUTIONAL PROTECTIONS AGAINST DOUBLE JEOPARDY AS THE JURY RETURNED A NOT GUILTY VERDICT ON []VOLUNTARY MANSLAUGHTER CHARGE.

## ASSIGNMENT OF ERROR III

APPELLANT SUFFERED PLAIN ERROR DUE TO THE TRIAL JUDGE SPEAKING TO THE JURY OUTSIDE THE PRESENCE OF DEFENSE COUNSEL AND THE DEFENDANT ABOUT RECONSIDERING THE NOT GUILTY VERDICT FOR []VOLUNTARY MANSLAUGHTER.

{¶16} In his second assignment of error, Diestler argues that his Double Jeopardy rights were offended when he was convicted of aggravated murder in spite of the jury's not guilty

finding on the lesser-included offense of voluntary manslaughter.[1]  In his third assignment of error, he argues that the trial judge committed plain error when he spoke privately with the jury and instructed them to reconsider their not guilty verdict on the voluntary manslaughter charge. For the following reasons, we reject Diestler's arguments.

**{¶17}**  Pursuant to Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."  For plain error to exist:

> First, there must be an error, i.e., a deviation from the legal rule. * * * Second, the error must be plain.  To be "plain" within the meaning of Crim.R. 52(B), an error must be an "obvious" defect in the trial proceedings. * * * Third, the error must have affected "substantial rights" * * * [and] affected the outcome of the trial.

(Internal citations omitted.)  *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002).  Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."  *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.  "[T]he accused bears the burden of proof to demonstrate plain error on the record * * *."  *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, ¶ 22.

**{¶18}**  The record reflects that the court instructed the jury on aggravated murder and the lesser-included offense of voluntary manslaughter.  The court explained to the jurors that the verdict form for that count would include both options, but they could "not sign more than one verdict on [that] count.  It's either/or."  When the jurors returned following deliberations, however, it became clear to the court that they had misunderstood its instructions.  The record reflects that the following events transpired:

---

[1] Throughout his brief, Diestler refers to the lesser-included offense of involuntary manslaughter. The jury, however, was only instructed on the lesser-included offense of *voluntary* manslaughter. We presume that Diestler intended to refer to that offense, so, in addressing his argument, we will only refer to voluntary manslaughter.

(Thereupon, the jurors were brought back into the courtroom and the following proceedings occurred.)

THE COURT: Please be seated, everyone.

I understand that the jury has reached a verdict; is that correct?

THE JUROR: * * * Yes, Your Honor.

THE COURT: Madam Forewoman, would you please give the forms to [the bailiff], I'll review them and then announce the verdicts in open court.

All right. Before I even look at these, again, on behalf of all the parties and the citizens of Lorain County, thank you for your service and sacrifice for being here these two weeks.

Okay. I'm going to have to send the jury back for just a moment, and I'll explain.

I understand how you handled this, but I'm going to clear something up and then you can go back.

With the Count 1, * * * [that] count[] [] had an inferior, what they call an inferior offense as well as the main offense, and you were only to return, you only have to do one or the other. I could have perhaps been more clear about that.

If you find, if you do reach -- you don't reach a verdict on both, it's one or the other. If you find one, then the other one is irrelevant, and not to be filled out. This was * * * the first time we've had a situation where we've had the inferior charge to go along with something, so it's not something that happens all that often around here. So I can understand why that mistake was made, but I think I need to have you go back and pull out the one that doesn't apply, and just return with the verdict that counts.

Does that make sense to you all?

THE JURORS: (Indicating).

THE COURT: And if counsel will approach.

----

(Thereupon, the following proceedings occurred at the bench out of the hearing of the jury.)

----

(Thereupon, the jurors exited the courtroom and the following proceedings occurred.)

----

THE COURT: I'm going to short-circuit the surprise of what happened. They found the defendant guilty of all the major crimes, aggravated murder, and so forth. And they filled that out guilty and signed it.

With respect to * * * []voluntary manslaughter, they filled it out not guilty. I think they were meant to -- they filled out both forms for each count, just trying to show which ones they were going to find and impose a finding.

So I've asked them to go back and remove -- they're only supposed to have one, and they have to come back and tell me which one that is, and I mean I think, I understand you'll understand that as well. I will preserve everything if there needs to be, but that's the situation. So, be prepared.

Subsequently, the jurors returned to the courtroom and submitted their verdict, finding Diestler guilty of aggravated murder.

{¶19} Diestler argues that the trial judge committed plain error when he addressed the jurors outside his and his counsel's presence. Yet, the transcript does not support his assertion that the judge did so. The record reflects that the judge discovered the error with the verdict forms in open court and immediately addressed the jury. He then reconvened the jury and shared with counsel what he had seen written on the forms when he reviewed them in open court. There is no indication in the transcript that the judge spoke with the jury outside the presence of Diestler or his counsel. Accordingly, for purposes of demonstrating plain error, Diestler has not shown that an error occurred. *See Barnes*, 94 Ohio St.3d at 27. His third assignment of error is overruled on that basis.

{¶20} We likewise reject Diestler's argument that the trial judge erred and violated his Double Jeopardy rights when issuing the jury additional instructions regarding the verdict forms.

"If there is any defect merely in the form of a verdict first returned, the court has the right to decline to receive it, and to require the jury to retire for further consideration, and without in any way interfering with their province as to what verdict they shall find, may properly instruct them as to its form, or submit to them one to be adopted if agreed upon."

*State v. Smith*, 9th Dist. Summit No. 11601, 1984 WL 5185, *3 (July 18, 1984), quoting 27 Ohio Jurisprudence 3d, Criminal Law, Section 1051, at 315. *Accord State v. Davie*, 80 Ohio St.3d 311, 326 (1997) ("The better practice * * * would have been for the trial court to reconvene the jury to redeliberate * * *."). When the jury first returned the verdict form for Count One, the form had a guilty finding for Diestler's aggravated murder charge and a not guilty finding for the lesser-included offense of voluntary manslaughter. The form, therefore, was defective on its face. In light of that defect, the trial judge chose to instruct the jurors and have them retire for further consideration. *See Smith* at *3. The judge informed the jury, consistent with its initial instructions, to return a verdict on only one of those offenses (i.e., either aggravated murder or voluntary manslaughter). The judge did not tell the jury which verdict to change; only that they needed to reconvene, "pull out the one that doesn't apply, and just return with the verdict that counts." Thus, the record does not support the conclusion that the judge interfered with the jury's province or specifically instructed the jury to disregard a not guilty verdict. Diestler's second assignment of error is overruled.

## ASSIGNMENT OF ERROR V

THE TRIAL COURT ERRED WHEN IT FAILED TO PERSONALLY ASK DIESTLER IF HE WISHED TO EXERCISE HIS RIGHT TO ALLOCUTION.

{¶21} In his fifth assignment of error, Diestler argues that the trial court erred when it denied him his right of allocution. We agree.

{¶22} Crim.R. 32(A)(1) states, in part, that "[a]t the time of imposing sentence, the court shall * * * address the defendant personally and ask if he or she wishes to make a statement in his or her own behalf or present any information in mitigation of punishment." "The purpose of allocution is to permit the defendant to speak on his own behalf or present any information in mitigation of punishment." *Reynolds*, 80 Ohio St.3d at 684. "Trial courts must painstakingly

adhere to Crim.R. 32, guaranteeing the right of allocution. A Crim.R. 32 inquiry is much more than an empty ritual: it represents a defendant's last opportunity to plead his case or express remorse." *State v. Green*, 90 Ohio St.3d 352, 359-360 (2000). "Both the Ohio Supreme Court and this Court have recognized that a trial court complies with a defendant's right of allocution when it personally addresses the defendant and asks whether he has anything to say." *State v. Daniels*, 9th Dist. Summit No. 26406, 2013-Ohio-358, ¶ 14. "In a case in which the trial court has imposed sentence without first asking the defendant whether he or she wishes to exercise the right of allocution created by Crim.R. 32(A), resentencing is required unless the error is invited error or harmless error." *State v. Campbell*, 90 Ohio St.3d 320 (2000), paragraph three of the syllabus.

{¶23} The record reflects that the trial court never personally addressed Diestler to ask whether he had anything to say on his own behalf. At the start of the hearing, the court informed defense counsel: "you and your client may address the Court first as is customary." Defense counsel then indicated that he would speak on Diestler's behalf and did so, at length. Subsequently, the court sentenced Diestler without informing him that he had a right to speak on his own behalf or asking him if he would like to say anything.

{¶24} The State acknowledges that the court failed to afford Diestler his right of allocution, but argues that defense counsel invited the error. For the invited error doctrine to apply, however, counsel must have "induced" or have been "actively responsible" for the court's error. *Id.* at 324. This Court cannot agree that defense counsel went so far as to invite the error that occurred here. Defense counsel merely indicated at the start of the sentencing hearing that he intended to speak on Diestler's behalf. He did not ask the court to refrain from personally addressing Diestler, or indicate that he had instructed Diestler not to respond, should the court

address him.  *See id.*  At the conclusion of his and the prosecutor's presentations, the court simply went on to sentence Diestler.  Because the record does not support the conclusion that defense counsel invited the court's error, we reject the State's argument to the contrary.

{¶25}  The record reflects that the trial court failed to "painstakingly adhere to Crim.R.32 * * *" when sentencing Diestler.  *Green*, 90 Ohio St.3d at 359-360.  Because the court neglected to comply with the dictates of Crim.R. 32(A)(1), Diestler's sentence is vacated, and the matter is remanded for resentencing.  *See State v. Johnson*, 9th Dist. Summit No. 28268, 2017-Ohio-913, ¶ 11, citing *Campbell*, 90 Ohio St.3d 320 at paragraph three of the syllabus.  His fifth assignment of error is sustained.

### ASSIGNMENT OF ERROR IV

THE TRIAL COURT COMMITTED PLAIN ERROR BY FAILING TO MERGE THE IMPROPERLY DISCHARGING A FIREARM CONVICTION AND ATTACHED FIREARM SPECIFICATION WITH THE FELONIOUS ASSAULT CONVICTION.

{¶26}  In his fourth assignment of error, Diestler argues that the trial court committed plain error when it sentenced him on allied offenses of similar import.  We have already determined, however, that this matter must be remanded for resentencing.  In light of that resolution, Diestler's allied offense argument is premature, and we decline to address it.

III.

{¶27}  Diestler's fifth assignment of error is sustained.  His fourth assignment of error is premature, and his remaining assignments of error are overruled.  The judgment of the Lorain County Court of Common Pleas is affirmed in part, reversed in part, and the cause is remanded for resentencing.

Judgment affirmed in part,
reversed in part,
and cause remanded.

14

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

 

 

 

 
                                              _____
DONNA J. CARR
FOR THE COURT

 

SCHAFER, P. J.
HENSAL, J.
CONCUR.

 

APPEARANCES:

DONALD GALLICK, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and LINDSEY C. POPROCKI, Assistant Prosecuting Attorney, for Appellee.