**UNITED STATES of America,**

v.

**Rashaun R. PURYEAR, Defendant.**

**Criminal No. 3:2009–34.**

United States District Court, W.D. Pennsylvania.

May 21, 2010.

John J. Valkovci, Jr., United States Attorney's Office, Johnstown, PA, for Defendant.

### *MEMORANDUM ORDER*

KIM R. GIBSON, District Judge.

This matter comes before the Court on the Government's Motion to Disqualify Counsel (Doc. No. 82). The Government filed the motion upon discovering that one of its witnesses is a former client of defense counsel Jerome J. Kaharick. The Government does not identify the witness by name in its motion but describes the scope of the witness' previous representation by Mr. Kaharick and the nature of the anticipated cross-examination by defense counsel. Mr. Kaharick has filed a response to the Government's motion expressing his inability to comment on the conflict without learning the identity of the former client in question.[1] For the reasons set forth below, the Court will grant the Government's motion.

Mr. Puryear was indicted on five counts of drug-related offenses on September 15, 2009. (Gov. Mot. ¶ 1.) He retained Mr. Kaharick to represent him. (Gov. Mot. ¶ 2.) One of the witnesses the Government intends to call has a prior conviction in the Cambria County Court of Common Pleas for unlawful firearms possession and unlawful flight to avoid apprehension. (Gov. Mot. ¶ 5.) The witness was represented in that criminal prosecution by Mr. Kaharick.

---

1. Pursuant to the Court's pretrial order, both the Government and Defendant filed their witness lists under seal.

(Gov. Mot. ¶ 6.) Thus, one of the Government's witnesses is a former client of Mr. Kaharick. The Government also represents that the conviction in question would constitute appropriate impeachment material under Federal Rule of Evidence 609(a)(1). (Gov. Mot. ¶ 7.)

■ At the outset, the Court notes the significant implications the Government's motion has for the Defendant. The very fact that Mr. Kaharick is the Defendant's privately retained counsel renders this Court's obligation to resolve this motion, as the Third Circuit aptly puts it, "unenviable." *United States v. Moscony,* 927 F.2d 742, 749 (3d Cir.1991). The right to counsel of choice is a right "derived from the [Sixth Amendment] right to effective assistance of counsel, for 'the right to counsel being conceded, a defendant should be afforded a fair opportunity to secure counsel of his own choice.'" *Id.* at 748 (quoting *Powell v. Alabama,* 287 U.S. 45, 53, 53 S.Ct. 55, 77 L.Ed. 158 (1932)). The Third Circuit points out that "a primary purpose of the Sixth Amendment is to grant a criminal defendant control over the conduct of his defense-as 'it is he who suffers the consequences if the defense fails.'" *Moscony,* 927 F.2d at 748 (quoting *Faretta v. California,* 422 U.S. 806, 820, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)). The protections of the Sixth Amendment thus include "a presumptive right to the counsel of one's choice." *Moscony,* 927 F.2d at 748. The Third Circuit "has clearly stated the importance of a defendant's securing the counsel of his choice." *Fuller v. Diesslin,* 868 F.2d 604, 610 (3d Cir.1989). The defendant's choice of counsel is "the most important decision a defendant makes in shaping his defense....Attorneys are not fungible, as are eggs, apples, and oranges. Attorneys may differ as to their trial strategy, their oratory style, or the importance they give to particular legal issues.... [A] defendant's decision to select a particular attorney becomes critical to the type of

defense he will make and thus falls within the ambit of the sixth amendment." *Id.* at 610 (quoting *United States v. Laura,* 607 F.2d 52, 56 (3d Cir.1979)).

Of course, the right to counsel of choice is not without limitations. The Government highlights some of the Supreme Court's language on this point, stating in its motion that "the 'essential aim' of the Sixth Amendment is 'to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer who [sic] he prefers.'" (Gov. Mot. 3 (quoting *Wheat v. United States,* 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988)).) This language was also cited by the court in *United States v. Cooley,* 243 F.Supp.2d 329, 331 (W.D.Pa.2003), another case in which a court granted a motion to disqualify and on which the Government relies heavily here. The Third Circuit has commented on this very passage from *Wheat* that the Government cites:

> [E]ven if the right to counsel of choice exists for the purpose of securing effective assistance of counsel to the defendant ... the two rights are not identical. We do not understand the language in *Wheat* to mean that the right to counsel of choice is important *only* insofar as it secures the right to effective assistance of counsel. Rather, it could be fairly interpreted to mean that, although the core value in the sixth amendment is effective assistance of counsel, the amendment also comprehends other related rights, such as the "right to select and be represented by one's preferred attorney."

*Fuller,* 868 F.2d 604 (quoting *Wheat,* 486 U.S. at 159, 108 S.Ct. 1692). This Court likewise does not construe the language in *Wheat* to diminish the importance of the right to counsel of choice. There is still room within the Sixth Amendment for the presumptive right to counsel of choice.

The presumptive right to chosen counsel must be overcome in order to deprive a defendant of his retained counsel. *Moscony,* 927, F.2d at 748. A conflict of interest can overcome the presumptive right to chosen counsel because the Sixth Amendment's guarantee of effective assistance of counsel includes the right to conflict-free representation. *Id.* The Court need not wait for the conflict to actually present itself at trial. Indeed, "that presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict." *Wheat,* 486 U.S. at 164, 108 S.Ct. 1692. Here, the Court finds that the conflict that has arisen in this case, most properly characterized as "actual" but certainly at least of serious potential, outweighs the Defendant's presumptive right to the counsel of his choice.

"Conflicts of interest arise whenever an attorney's loyalties are divided...." *Moscony,* 927 F.2d at 750. A division of loyalty threatens to inject itself into this case during Mr. Kaharick's cross-examination of the Government's witness. The Government hones in on the Rule 609 impeachment it expects during the cross-examination and Mr. Kaharick's ethical obligations (Gov. Mot. ¶ 7), but this to the Court appears to be the most innocuous part of the anticipated cross-examination since Mr. Kaharick would at least be confined to matters of public record (i.e. the conviction itself). Certainly the very idea of an attorney impeaching a former client with a conviction that came out of the former representation is extremely unpalatable and militates strongly in favor of disqualification. The Court simply notes that the impeachment itself need not necessarily violate an ethical rule. Far more noxious to trial proceedings than the impeachment by prior conviction (a small, though damaging, slice of the entire line of questioning) is the very cross-examination itself, wherein the former attorney would be pitted against the former client. With or without impeachment by prior conviction, "an attorney who cross-examines former clients inherently encounters divided loyalties." *Moscony,* 927 F.2d at 750. That is the critical conflict of interest that overcomes the Defendant's presumptive right to counsel of choice.

It is unknown whether the Defendant would be willing to waive conflict-free representation. Indeed, it is not clear how the Defendant could even decide that question since he does not know the name of the Government's witness. In the event of a proffered waiver, though, the Court would have to resolve the clash of the defense counsel's rights and duties that arises "when a defendant seeks to waive his right to conflict-free representation in circumstances in which the counsel of his choice may have divided loyalties due to ... prior representation of another client who is ... a government witness." *Moscony,* 927 F.2d at 749. Waiver is contemplated by the Pennsylvania Rules of Professional Conduct[2], most pertinently Rule 1.9[3], duties to former clients, and Rule

---

**2.** Pursuant to Local Rule 83.3.1(B), the Court adopts the Pennsylvania Rules of Professional Conduct, except for Rule 3.10, as the controlling ethical rules for attorneys admitted to practice before this Court.

**3.** Rule 1.9 provides:

(a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent.

(b) A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client

    (1) whose interests are materially adverse to that person; and

1.7[4], conflicts of interest with current clients. The Supreme Court has made clear that "where a court justifiably finds an actual conflict of interest, there can be no doubt that it may decline a proffer of waiver...." *Wheat*, 486 U.S. at 162, 108 S.Ct. 1692. The Court need not wait for a proffered waiver to decide one would be ineffective. Because the Court finds the conflict of interest in Mr. Kaharick's continued representation of the Defendant to be so serious, it preemptively declines any waiver should one even be contemplated.

It is not only the magnitude of the conflict that requires a ruling in the Government's favor. The Third Circuit in *Moscony* explained that because other issues are at play besides the attorney's conflicting rights and duties, a waiver of *conflict-free* representation will likely not resolve the matter anyway:

> [A] waiver does not necessarily resolve the matter, for the trial court has an institutional interest in protecting the truth-seeking function of the proceedings over which it is presiding by considering whether the defendant has effective assistance of counsel, regardless of any proffered waiver. Moreover, to protect the critically important candor that must exist between client and attorney, and to engender respect for the court in general, the trial court may enforce the ethical rules governing the legal profession with respect both to client-attorney communications and to conflict-free representation, again regardless of any purported waiver. Finally, the court has an independent interest in protecting a fairly-rendered verdict from trial tactics that may be designed to generate issues on appeal.

927 F.2d at 749. No waiver in this case could alleviate the Court's concerns for the Defendant's effective assistance of counsel, regardless of Mr. Kaharick's skill as an attorney. The fact that the Pennsylvania Rules of Professional Conduct allow for waiver in certain circumstances by no means compels the Court to entertain it. Placing an attorney in the position of impeaching his former client with a convic-

> (2) about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter;
>
> unless the former client gives informed consent.
>
> (c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
>
> > (1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or
> >
> > (2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.

4. Rule 1.7 provides as follows:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

> > (1) the representation of one client will be directly adverse to another client; or
> >
> > (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.
>
> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
>
> > (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
> >
> > (2) the representation is not prohibited by law;
> >
> > (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
> >
> > (4) each affected client gives informed consent.

tion on which the attorney once served as defense counsel would do little to engender respect for the court or the legal profession. The entire cross-examination places too great a strain on the attorney-client relationship to be tolerated in the courtroom. Furthermore, there is no doubt as to the possibility of "future attacks over the adequacy of the waiver or the fairness of proceedings in [this Court] and the subtle problems implicating the defendant's comprehension of the waiver." *Moscony*, 927 F.2d at 750; *see also Wheat*, 486 U.S. at 162, 108 S.Ct. 1692 (observing "the apparent willingness of Courts of Appeals to entertain ineffective-assistance claims from defendants who have specifically waived the right to conflict-free counsel"). The Court need not even inquire as to the possibility of a waiver because no waiver could cure the collateral damage that would befall the trial proceedings were disqualification to be denied. The Court's considerations militate in favor of disqualification in this case.

Because the Court would not accept any purported waiver by the Defendant or the Government witness, disclosure of the name of the Government witness/former client or the anticipated testimony would serve no purpose in adjudicating the Government's motion. Defense counsel asks in his responsive brief, "Does the Government really intend to argue to this Court that in a list of Government witnesses, which must be significant, this one witness is critical and the cross-examination which this counsel would conduct would jeopardize the case for the Government?" (Def.'s Resp. ¶ 7.) Unfortunately for Mr. Kaharick, examination of the caselaw on this issue reveals that the importance of a Government's witness to its case is not an explicit factor in the disqualification of re-

tained counsel. Although in *Moscony* one of the Government's witnesses was described as "central to the government's case," 927 F.2d at 747–48, and "a key government witness," 927 F.2d at 750, the indispensability of the witness seems to relate only to the anticipated vigor of cross-examination necessary. The more important the witness, the greater the need for incisive cross-examination, and the greater the risk to the defendant's right to effective assistance of counsel should that cross-examination be laden with conflict.

The Court's disposition of the Government's motion, albeit legally sound, deals an unexpected blow to the Defendant. While the defense attorney in *Moscony* was warned repeatedly by the Government during the grand jury investigation phase of the case that his representation would ultimately pose an irreconcilable conflict, Mr. Kaharick and his client have been blind-sided shortly before trial[5]. *See Moscony*, 927 F.2d at 747 (noting that defense counsel continued his representation of the defendant "despite several warnings from the government that the multiple representation might pose a conflict of interest"). It is no light matter for this Court to disqualify Mr. Kaharick, for "the effect of a disqualification is to deny a criminal defendant his or her presumptive right to chosen counsel." *United States v. Voigt*, 89 F.3d 1050, 1078 (3d Cir.1996). The Government's presentation of its case remains unaffected.

**IT IS HEREBY ORDERED** that the Government's Motion to Disqualify Counsel (Doc. No. 82) is **GRANTED.**

**IT IS FURTHER ORDERED** that Attorney Jerome J. Kaharick is disqualified and removed from representation of De-

---

**5.** The trial date has since been continued, but the Government filed its motion (promptly after discovering the conflict) approximately one week before the date trial was expected to begin.

fendant Puryear and that another counsel shall be appointed for Defendant Puryear.