**[Cite as *State v. Hackney*, 2021-Ohio-2064.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                         Court of Appeals No.  L-20-1193

    Appellee                                       Trial Court No.  CR0202001060

v.

Rhonda Hackney                               **DECISION AND JUDGMENT**

    Appellant                                       Decided:  June 21, 2021

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Brenda J. Majdalani and Claudia A Ford,
Assistant Prosecuting Attorneys, for appellee.

Anthony J. Richardson, II, and
Anthony A. Gonzalez, for appellant.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} Appellant, Rhonda Hackney, appeals the judgment entered by the Lucas

County Court of Common Pleas on October 21, 2020, granting the state's motion to

disqualify attorney Anthony Richardson ("Richardson") from representing her in the

above-captioned action. For the reasons that follow, we affirm the judgment of the trial court.

{¶ 2} Appellant sets forth the following assignment of error:

I.     The trial court was unreasonable in disqualifying appellant's defense counsel of choice.

**Statement of Facts**

{¶ 3} In the indictment, the state of Ohio charges appellant with the following offenses: complicity to possession of fentanyl and heroin, under R.C. 2923.03, R.C. 2925.11(A) and (C)(11), R.C. 2923.03, and R.C. 2925.11(A) and (C)(6)(a); complicity to trafficking in marijuana, under R.C. 2923.03, and R.C. 2925.03(A)(2) and (C)(3)(a); complicity to having weapons under a disability, under R.C. 2923.03, and R.C. 2923.13(A) and (B); endangering children, under R.C. 2919.22; and tampering with evidence, under R.C. 2921.12.

{¶ 4} The charges resulted from a search executed on May 16, 2019, at appellant's residence, where appellant resided with her son, Antoine Gaither, who was also indicted. The court joined appellant's case with Gaither's for trial, in Lucas County case No. CR19-2421, but the cases were subsequently separated, following the filing of the instant appeal. Both cases are currently awaiting trial.

{¶ 5} Initial discovery in this case was provided to defense counsel Richardson on February 7, 2020, and supplemental discovery was produced on February 20 and 24,

2.

2020, respectively. In the discovery, the state made defense counsel aware that Miracle Durden was a material witness in the joined case against appellant and her son. At all relevant times, the discovery identified Durden as Gaither's significant other and indicated that Durden and Gaither shared a residence. The state asserts that audio-recorded evidence that was provided to defense counsel "directly implicate[s]" appellant in one or more of the crimes for which she was indicted, and, further, establishes that Durden could possibly face criminal charges for her participation with appellant in one or more of the crimes for which appellant was indicted. The state further asserts that the prosecution may call Miracle Durden as a witness in both appellant and Gaither's cases.

{¶ 6} On or about May 27, 2020, attorney Richardson, although fully aware that Durden had been identified as a material witness for the state in the Lucas County case, entered his appearance on behalf of Miracle Durden in a Franklin County criminal case in which Durden faced robbery charges. The state asserts that defense counsel's conduct created a conflict of interest involving his ethical obligations to his clients, appellant and Durden. Richardson and appellant dispute this assertion.

### Statement of the Case

{¶ 7} On July 16, 2020, the state filed a motion to disqualify counsel to have Richardson removed as counsel of record for appellant. On July 20, 2020, Richardson obtained informed consent, signed by appellant and Miracle Durden, to continue representation of both clients in the unrelated matters. Richardson filed a memo

3.

opposing the motion to disqualify, on July 24, 2020. On August 11, 2020, the state filed its reply memo in support.

{¶ 8} The Lucas County trial court heard oral arguments on September 10, 2020. Appellant and Miracle Durden were available to waive any conflict on the record. On October 21, 2020, the trial court granted the motion to disqualify Richardson, asserting that the U.S. Constitution required such award to the state. Appellant filed a timely notice of appeal on November 19, 2020.

## Analysis

{¶ 9} Criminal defendants have a right to counsel, guaranteed under the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution. " '[A]n element of this right is the right of a defendant who does not require appointed counsel to choose who will represent him.' " *State v. Miller*, 9th Dist. Summit No. 27048, 2015-Ohio-279, ¶ 8, quoting *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144, 126 S. Ct. 2557, 165 L.Ed.2d 409 (2006). "A court commits structural error when it wrongfully denies a defendant his counsel of choice, so a defendant need not demonstrate further prejudice." *Id.* The wrongful deprivation of a defendant's choice of counsel "entitles [the defendant] to an automatic reversal of his conviction." *State v. Chambliss*, 128 Ohio St.3d 507, 2011-Ohio-1785, 947 N.E.2d 651, ¶ 18. Further, "because the right to one's choice of counsel is fundamental, a pretrial ruling that

4.

removes one's retained counsel of choice is immediately appealable." *State v. Ross,* 2018-Ohio-3524, 108 N.E.3d 1247, ¶ 5 (9th Dist.).

{¶ 10} Although fundamental, the right to counsel is not absolute. *Id.* at ¶ 6. A defendant has no right to an attorney with a conflict of interest. *Id.* An actual conflict or even "a showing of a serious potential for conflict" will justify a trial court's removal of a defendant's counsel of choice. *Id.*, citing *Wheat v. United States*, 486 U.S. 153, 164, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988). This is because trial courts have an " 'independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them.' " *Gonzalez-Lopez* at 152, quoting *Wheat* at 160. Thus, "[t]rial courts have the inherent authority to regulate the conduct of attorneys, including the disqualification of attorneys in accordance with the Ohio Rules of Professional Conduct." *State v. Rivera*, 9th Dist. Lorain Nos. 16CA011057, 16CA011059, 16CA011060, 16CA011061, 16CA011063, 16CA011073, 16CA011075, 2017-Ohio-8514, ¶ 8, citing *Harold Pollock Co., LPA v. Bishop,* 9th Dist. Lorain No. 12CA010233, 2014-Ohio-1132, ¶ 7. *See also Avon Lake Mun. Utils. Dep't v. Pfizenmayer*, 9th Dist. Lorain No. 07CA009174, 2008-Ohio-344, ¶ 13.

{¶ 11} Trial courts possess broad discretion when considering motions to disqualify counsel and, therefore, an appellate court reviews a trial court's determination regarding a motion to disqualify counsel for an abuse of discretion. *In re E.M.J.*, 9th

5.

Dist. Medina No. 15CA0098-M, 2017-Ohio-1090, ¶ 5, quoting *Pfizenmayer* at ¶ 13. An abuse of discretion connotes more than a mere error of law or judgment, and instead requires a finding that the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 276 (1983).

{¶ 12} Prof. Cond. Rule 1.7, which addresses attorney conflicts of interest with current clients, relevantly provides:

(a) A lawyer's acceptance or continuation of representation of a client creates a conflict of interest if either of the following applies:

(1) the representation of that client will be directly adverse to another current client;

(2) there is a *substantial* risk that the lawyer's ability to consider, recommend, or carry out an appropriate course of action for that client will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by the lawyer's own personal interests.

(b) A lawyer shall not accept or continue the representation of a client if a conflict of interest would be created pursuant to division (a) of this rule, unless all of the following apply:

(1) the lawyer will be able to provide competent and diligent representation to each affected client;

6.

(2) each affected client gives *informed consent, confirmed in writing*;

(3) the representation is not precluded by division (c) of this rule.

(c)  Even if each affected client consents, the lawyer shall not accept or continue the representation if either of the following applies:

(1) the representation is prohibited by law;

(2) the representation would involve the assertion of a claim by one client against another client represented by the lawyer in the same proceeding.

{¶ 13} Not just the trial court, but defense counsel as well is under an affirmative duty to ensure that a defendant's representation is conflict-free.  *State v. Dillon*, 74 Ohio St.3d 166, 167–68, 657 N.E.2d 273, 275 (1995).  Nevertheless, attorney Richardson took on representation of Durden, a state witness, some three months after he received audio-recorded evidence that is steadfastly characterized by the state as showing that Durden is an adverse material witness to appellant, his client in this case.  According to the state, Durden's audio-recorded telephone conversations directly implicate appellant in one or more of the crimes for which appellant was indicted.

{¶ 14} Attorney Richardson claims that he was unaware of any potential conflict of interest, that he does not consider Durden to be an adverse witness, and that -- unlike the state -- he does not believe that Durden's testimony would be directly harmful to appellant's case.  Because he does not consider Durden to be an adverse witness, Richardson claims that he would be able to effectively represent appellant, even if he had

7.

to cross-examine Durden.  However, because the purpose of cross-examination is to discredit any testimony that is favorable to the state, it seems unlikely that Richardson could vigorously cross-examine Durden, while having her as a client.

{¶ 15} Richardson states that if Durden were to testify, her testimony would not be harmful to appellant, as it would be in all ways consistent with the positions taken by appellant.  Such a statement implies that Richardson has already had discussions with his one client, Durden, about her knowledge of the facts that led to the charges against his other client, appellant.  Those conversations between counsel and each of his clients are confidential communications protected by the attorney-client privilege.

{¶ 16} Here, the serious potential conflict is clear.  "Courts have recognized the 'obvious' potential for conflict where defense counsel 'is under a duty to represent zealously the defendant, while on the other hand, he has a duty of confidentiality to his former client, the government witness.' " *State v. Johnson*, 10th Dist. Franklin App. Nos. 13AP-997, 13AP-999, 2015-Ohio-3248, 40 N.E.3d 628, ¶ 91, citing *United States v. Falzone*, 766 F.Supp. 1265, 1271 (W.D.N.Y. 1991).  It has frequently been decided that an attorney's duty of loyalty to a client requires disqualification in cases where a former client seeks to cooperate with the government and to testify against the present client. *Id.*, citing *United States v. Alvarez*, S.D.Fla. No. 10-20547-CR, 2010 WL 4774649 (Nov. 16, 2010).  The court in *Johnson* noted that "[t]he potential for conflict arises especially in the context of cross-examination, as defense counsel's 'most important function'

8.

during a criminal trial is to 'vigorously cross-examine the government's witness.' " *Id.*, citing *Falzone* at 1271; *see also United States v. Moscony*, 927 F.2d 742, 750 (3rd Cir. 1991) ("Conflicts of interest arise whenever an attorney's loyalties are divided * * * and an attorney who cross-examines former clients inherently encounters divided loyalties.") "[T]here need not be a 'substantial relationship' between the subject matter of the prior representation and the issues in the present case before disqualification is warranted." *Falzone* at 1275. Instead, "[a]ll that is required is that the interest of the defendant potentially conflicts with the interest of the former client." *Id.*[1]

{¶ 17} As indicated above, Prof. Cond. Rule 1.7(a)(1) provides that a "lawyer's acceptance or continuation of representation of a client creates a conflict of interest if * * * the representation of that client will be directly adverse to another current client * * *." Examples of what constitutes "directly adverse" representation is explained in the comments to this rule. Comment 10 provides that "[t]he concurrent representation of clients whose interests are directly adverse always creates a conflict of interest." Comment 11 explains that "a directly adverse conflict may also arise when effective representation of a client who is a party in a lawsuit requires a lawyer to cross-examine another client, represented in a different matter, who appears as a witness in the suit."

---

[1] To the extent that the cited cases deal with "former," as compared to "current," clients, we feel that this is a distinction without a difference as far as an attorney's ethical obligations are concerned.

{¶ 18} In the instant case, there is no question that it is at least conceivable, if not probable, that at trial in appellant's case, defense counsel will be required to cross-examine his client, Durden. This presents a serious, potential conflict of interest which disqualifies Richardson under Prof. Cond. Rule 1.7(a)(1).

{¶ 19} We next consider Prof. Cond. Rule 1.7(a)(2), which provides that a conflict arises when "there is a substantial risk that the lawyer's ability to consider, recommend, or carry out an appropriate course of action for that client will be materially limited by the lawyer's responsibilities to another client * * * ." Comment 17 to this rule explains that a material limitation conflict of interest exists "if there is a substantial risk that a lawyer's action on behalf of one client in one case will materially limit the lawyer's effectiveness in concurrently representing another client in a different case."

{¶ 20} In the current case, Durden is said to have material information, and she is said to have been present at times relevant to the charges against appellant and her co-defendant, Gaither. It is certainly conceivable, if not probable, that a material witness with potential criminal culpability might eventually choose to cooperate with the state and to testify against appellant in order to avoid a felony indictment. Should that situation arise in this case, it is unclear how defense counsel could ethically discuss such an option with Durden, because he already represents appellant.

{¶ 21} Defense counsel cannot advocate on behalf of a client in one case, when it will likely weaken the position taken on behalf of another client in another case. Thus,

counsel is limited with respect to the advice he can give to one client without potentially negatively impacting the other. If Durden testifies in this case -- whether called by the state or as a court witness -- counsel will be placed in the position of having to cross-examine his own client. Should the state indict Durden on the same set of facts as in the present case, counsel will also have a conflict of interest in the development of trial strategies, in the negotiation of plea agreements, and in the mitigation phases at sentencing of his clients. It is also conceivable that either or both of counsel's clients could raise the conflict-of-interest issue on appeal, or in other post-conviction actions, by way of an ineffective assistance of counsel claim, which could then result in an overturned conviction.

{¶ 22} For all of the foregoing reasons, we find that defense counsel has also created serious potential for conflict of interest in this case under Prof. Cond Rule 1.7(A)(2).

{¶ 23} We additionally find that the written consent that was executed by appellant and Durden does not obviate or cure Richardson's conflict of interest. This is because the trial court has "substantial latitude" to reject a client's waiver of conflicts of interest. *State v. Gilliam*, 4th Dist. Scioto App. Nos. 11CA3439, 11CA3440, 2013-Ohio-888, ¶ 1. The trial court can refuse proffered waivers "not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases [such as the one at hand] where a potential for conflict exists which may or may not burgeon

into an actual conflict as the trial progresses." *Wheat*, 486 U.S. at 163, 108 S.Ct. 1692, 100 L.Ed.2d 140. It has been recognized that permitting defendants to proceed with conflicted counsel is " 'detrimental to the independent interest of the trial judge to be free from future attacks over the adequacy of the waiver or the fairness of the proceedings in his own court.' " *Wheat* at 162, quoting *United States v. Dolan*, 570 F.2d 1177, 1184 (3d Cir. 1978).

{¶ 24} Upon consideration of all of the foregoing, we find that the trial court properly disqualified appellant's retained counsel under Prof. Cond. Rule 1.07, based on the existence of an actual and/or serious potential conflict of interest. As the trial court acted entirely within its broad discretion in disqualifying counsel, appellant's sole assignment of error is found not well-taken. We affirm the judgment of the Lucas County Court of Common Pleas. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment Affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.        _____
                                                                  JUDGE

Thomas J. Osowik, J.

_____

Myron C. Duhart, J.                                             JUDGE
CONCUR.

_____
                                            JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.