[Cite as *State v. Johnson*, 2025-Ohio-2206.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 24AP-569 |
| | | (C.P.C. No. 06CR-4322) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Shawan M. Johnson, | : | |
| Defendant-Appellant. | : | |

---

D E C I S I O N

Rendered on June 24, 2025

---

**On brief:** *Shayla D. Favor*, Prosecuting Attorney, and *Mark R. Wilson*, for appellee. **Argued:** *Mark R. Wilson*.

**On brief:** *Rancour Scarsella, LLC* and *Paul L. Scarsella*, for appellant. **Argued:** *Paul L. Scarsella*.

---

APPEAL from the Franklin County Court of Common Pleas

EDELSTEIN, J.

{¶ 1} Defendant-appellant, Shawan M. Johnson, appeals from the August 19, 2024 decision of the Franklin County Court of Common Pleas denying his post-conviction motion for a new trial. For the following reasons, we affirm.

I. PROCEDURAL HISTORY

{¶ 2} Mr. Johnson was indicted on June 9, 2006 by a Franklin County Grand Jury for the aggravated murder of Richard Willis, the felonious assault of Danielle Hogg, the felonious assault of Dennis White, and having a weapon while under disability. All offenses involved a shooting incident in the parking lot of an apartment complex on November 9, 2005.

{¶ 3}   At Mr. Johnson's 2008 trial, the facts and circumstances of the shooting incident were in dispute.  Ultimately, the jury found Mr. Johnson guilty of one count of purposeful murder with firearm specification (as a lesser-included offense of aggravated murder) and having a weapon while under disability.  He was acquitted on the two counts of felonious assault.  Prior to sentencing, Mr. Johnson moved to set aside the verdict (arguing the jury rendered inconsistent verdicts) and for a new trial (based on the death of a key witness, Tyrell Davis, during trial, which Mr. Johnson claimed impacted the trial court's decision not to instruct the jury on self-defense).  After orally denying both of these motions, the court sentenced Mr. Johnson to a definite prison term of 23 years to life in July 2008.

{¶ 4}   Mr. Johnson unsuccessfully appealed his 2008 convictions to this court in *State v. Johnson*, 2009-Ohio-3383 (10th Dist.) ("*Johnson I*"), exhausted his potential state remedies, and was denied federal habeas corpus relief.

{¶ 5}   The general facts and procedural history preceding Mr. Johnson's 2022 and 2023 motions for a new trial are laid out in *Johnson I* (affirming convictions on direct appeal), *Johnson v. Morgan*, 2013 U.S. Dist. LEXIS 39622 (S.D. Ohio Mar. 21, 2013) (magistrate's decision recommending denial of petition seeking federal habeas corpus relief), and *Johnson v. Morgan*, 2013 U.S. Dist. LEXIS 106521 (S.D. Ohio July 30, 2013) (adopting magistrate's decision and denying federal habeas corpus petition).

{¶ 6}   On June 23, 2022, Mr. Johnson filed a delayed motion for a new trial based on newly discovered evidence under Crim.R. 33(A)(6).  Since his motion for a new trial was filed years after the jury rendered its verdict, Mr. Johnson appropriately sought leave from the trial court to file his delayed motion for a new trial pursuant to Crim.R. 33(B).  In support of his motion for a new trial, Mr. Johnson submitted an affidavit averring that, nearly a decade after his trial, he learned his trial attorney had previously represented one of the witnesses who testified against him at trial.  (*See* June 24, 2022 Ex. A at ¶ 9.)  Mr. Johnson argued that this prior representation—about which Mr. Johnson was not previously aware—created an actual conflict of interest under Prof.Cond.R. 1.7 and adversely affected his trial counsel's performance during cross-examination of that witness.

{¶ 7}   On November 18, 2022, the trial court conducted a hearing on Mr. Johnson's motion for leave to file a delayed motion for a new trial.  At the conclusion of that hearing,

the court found Mr. Johnson had shown, by clear and convincing evidence, a sufficient basis to warrant the delayed filing of his motion for a new trial under Crim.R. 33(B).   In lieu of receiving affidavits addressing the conflict of interest issue raised in Mr. Johnson's motion, the court scheduled the matter for a hearing.  Prior to that hearing, Mr. Johnson filed an amended motion for a new trial, presenting an additional ground for relief: his recent discovery of the location and availability of an eyewitness, A.C., who could not be located at the time of Mr. Johnson's 2008 trial.

{¶ 8}   On March 17, 2023 and May 12, 2023, the trial court heard evidence on Mr. Johnson's motions for a new trial, including testimony from Mr. Johnson, Mr. Johnson's trial counsel, and A.C., as discussed more below.  And in June 2023, after all evidence on Mr. Johnson's motions for a new trial was presented, both parties filed written closing arguments.

{¶ 9}   On August 19, 2024, the trial court issued a written decision finding Mr. Johnson failed to set forth sufficient grounds to warrant a new trial under Crim.R. 33(A)(6).  Regarding Mr. Johnson's ineffective assistance of counsel claim, the court noted that Mr. Johnson presented an ineffective assistance of counsel claim on direct appeal— albeit, concerning different allegations of deficient performance—which was rejected by this court in *Johnson I*.  The trial court concluded that "[b]ecause the allegation of ineffective assistance of counsel has already been decided," it "cannot and will not revisit the issue again in the context of a new trial."  (*See* Aug. 19, 2024 Decision & Entry at 3.) Regarding the newly available witness, the trial court found Crim.R. 33(A)(6) did not apply because the defense knew of A.C. prior to the start of trial.[1]  Based on these findings, the court denied Mr. Johnson's motion for a new trial.

{¶ 10} Mr. Johnson now appeals from that judgment and raises the following two assignments of error for our review:

> [I.] THE TRIAL COURT'S DECISION TO DENY THE MOTION FOR A NEW TRIAL WAS AN ABUSE OF DISCRETION AND THE MOTION FOR A NEW TRIAL SHOULD HAVE BEEN GRANTED.
>
> [II.] THE DENIAL OF THE MOTION FOR A NEW TRIAL BASED UPON THE CONFLICT OF INTEREST ISSUE

---

[1] Mr. Johnson does not challenge the propriety of the second finding on appeal, so we will not address it.

IGNORED BY THE TRIAL COURT ALLOWS THIS COURT
TO GRANT THE APPROPRIATE RELIEF OF A NEW TRIAL
IN THIS MATTER.

## II. ANALYSIS

{¶ 11} Mr. Johnson contends the trial court abused its discretion in denying his motion for a new trial. As a preliminary matter, we note that Mr. Johnson's statement of his second assignment of error does not attribute error to any action by the court. Instead, he contends that, notwithstanding the court's determination that res judicata barred consideration of his conflict of interest claim, we should address the merits of that claim and find the evidence established a new trial was warranted. Because both of Mr. Johnson's assignments of error are interrelated, we address them together.

### A. Standard of Review

{¶ 12} We review a lower court's decision to deny a motion for a new trial on grounds of newly discovered evidence under an abuse of discretion standard. *See*, *e.g.*, *State v. LaMar*, 2002-Ohio-2128, ¶ 85; *State v. Schiebel*, 55 Ohio St.3d 71 (1990), paragraph one of the syllabus. "[A]buse of discretion connotes that the court's attitude is unreasonable, arbitrary or unconscionable." (Internal quotations omitted.) *State v. Weaver*, 2022-Ohio-4371, ¶ 24, quoting *State v. Gondor*, 2006-Ohio-6679, ¶ 60, quoting *State v. Adams*, 62 Ohio St.2d 151, 157 (1980). "A court abuses its discretion when a legal rule entrusts a decision to a judge's discretion and the judge's exercise of that discretion is outside of the legally permissible range of choices." *State v. Hackett*, 2020-Ohio-6699, ¶ 19.

{¶ 13} "A decision is unreasonable if there is no sound reasoning process that would support the decision." (Internal quotations omitted.) *Fernando v. Fernando*, 2017-Ohio-9323, ¶ 7 (10th Dist.), quoting *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990). A decision is arbitrary if it is made "without consideration of or regard for facts [or] circumstances." (Internal quotations omitted.) *State v. Hill*, 2022-Ohio-4544, ¶ 9, quoting *State v. Beasley*, 2018-Ohio-16, ¶ 12, quoting *Black's Law Dictionary* 125 (10th Ed. 2014). A decision may also be arbitrary if it lacks an adequate determining principle and is not governed by any fixed rules or standards. *See Beasley* at ¶ 12, citing *Dayton ex rel. Scandrick v. McGee*, 67 Ohio St.2d 356, 359 (1981), quoting *Black's Law Dictionary* 96 (5th Ed. 1979). *See also Hackett* at

¶ 19. A decision is unconscionable if it "affronts the sense of justice, decency, or reasonableness." *Fernando* at ¶ 7, citing *Porter, Wright, Morris & Arthur, L.L.P. v. Frutta Del Mondo, Ltd.*, 2008-Ohio-3567, ¶ 11 (10th Dist.). Further, an abuse of discretion may also be found where a trial court "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Thomas v. Cleveland*, 2008-Ohio-1720, ¶ 15 (8th Dist.).

{¶ 14} On purely legal questions, we apply de novo review. *New Asian Super Mkt. v. Weng*, 2018-Ohio-1248, ¶ 16 (10th Dist.).

### B. Controlling Legal Standards

{¶ 15} Crim.R. 33(B) provides that a motion for new trial based on newly discovered evidence must be filed within 120 days after a verdict is rendered. A party who fails to file a motion within that time must seek leave from the trial court to file a delayed motion for new trial. *State v. Armengau*, 2017-Ohio-197, ¶ 9 (10th Dist.). The trial court may grant leave to file a delayed motion for new trial if the movant shows, by clear and convincing evidence, that he was " 'unavoidably prevented from the discovery of the evidence upon which he must rely.' " *State v. Bethel*, 2022-Ohio-783, ¶ 53, quoting Crim.R. 33(B). The standard of "clear and convincing evidence" is defined as " 'that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.' " *Schiebel*, 55 Ohio St.3d at 74, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus. *See also Armengau* at ¶ 12.

{¶ 16} In this case, the trial court granted Mr. Johnson leave to file a delayed motion for a new trial based on newly discovered evidence under Crim.R. 33(A)(6). At issue is whether the evidence presented in support of his motion for a new trial was sufficient to establish that a new trial was warranted.

{¶ 17} Crim.R. 33(A)(6) provides that a new trial may be granted "[w]hen new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial." More precisely, Ohio courts have held that a new trial is warranted when the newly discovered evidence satisfies all of the following criteria (the "*Petro* factors"):

(1) discloses a strong probability that it will change the result if a new trial is granted;

(2) has been discovered since the trial;

(3) is such as could not in the exercise of due diligence have been discovered before the trial;

(4) is material to the issues;

(5) is not merely cumulative to former evidence; and

(6) does not merely impeach or contradict the former evidence.

*See, e.g.*, *State v. Cashin*, 2017-Ohio-9289, ¶ 15 (10th Dist.), quoting *State v. Hawkins*, 66 Ohio St.3d 339, 350 (1993), quoting *State v. Petro*, 148 Ohio St. 505 (1947), syllabus.

## C. Analysis

**{¶ 18}** In his motion for a new trial, Mr. Johnson argued that a new trial was warranted because newly discovered evidence showed he was denied the assistance of effective, ***conflict-free*** counsel. For the following reasons, we disagree.

### 1. Mr. Basnett's former representation of a current witness in the state's case against Mr. Johnson created a serious potential for conflict.

**{¶ 19}** "The fundamental right to counsel includes a 'correlative right to representation free from conflicts of interest.' " *State v. Williams*, 2021-Ohio-3152, ¶ 6, quoting *State v. Gillard*, 64 Ohio St.3d 304, 311 (1992). Under the Sixth Amendment to the United States Constitution, corresponding case law, and the Ohio Rules of Professional Conduct, defense counsel has a duty to provide effective, conflict-free assistance of counsel. *Williams* at ¶ 6, citing *Cuyler v. Sullivan*, 446 U.S. 335, 345 (1980). " 'Both defense counsel and the trial court are under an affirmative duty to ensure that a defendant's representation is conflict-free.' " *Williams* at ¶ 6, quoting *State v. Dillon*, 74 Ohio St.3d 166, 167-68 (1995).

**{¶ 20}** The Ohio Rules of Professional Conduct also establish when or how a conflict of interest is created, whether a conflict can be waived, and the requirements for waiver, if applicable. For instance, a lawyer's acceptance of a client creates a conflict of interest if "there is a *substantial risk* that the lawyer's ability to consider, recommend, or carry out an

appropriate course of action for that client will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by the lawyer's own personal interests." (Emphasis in original.) Prof.Cond.R. 1.7(a)(2). If a conflict of interest would be created, a lawyer cannot accept representation of a client unless: (1) the lawyer will be able to provide competent and diligent representation to each affected client; (2) each affected client gives informed consent, confirmed in writing; and (3) the representation is not prohibited by law and does not involve the assertion of a claim by one client against another client in the same proceeding. Prof.Cond.R. 1.7(b) and (c).

{¶ 21} A court may find a showing of a serious potential for conflict when defense counsel previously represented a current witness for the state. *See State v. Johnson*, 2015-Ohio-3248, ¶ 90 (10th Dist.); *United States v. Falzone*, 766 F.Supp. 1265, 1271 (W.D.N.Y. 1991); *State v. Hackney*, 2021-Ohio-2064, ¶ 16 (6th Dist.). Moreover, where there is a showing of an actual conflict or serious potential for a conflict, a trial court is not required to wait for the conflict to actually present itself at trial. *See, e.g., State v. Green*, 2024-Ohio-997, ¶ 23 (9th Dist.), quoting *United States v. Puryear*, 719 F.Supp.2d 571, 574 (W.D.Pa. 2010).

{¶ 22} "Courts have recognized the 'obvious' potential for conflict where defense counsel 'is under a duty to represent zealously the defendant, while on the other hand, he has a duty of confidentiality to his former client, the government witness.' " *Johnson*, 2015-Ohio-3248, at ¶ 91, quoting *Falzone* at 1271. *See also Hackney* at ¶ 16. And, we have recognized that "an attorney's duty of loyalty to a client 'requires disqualification when a former client seeks to cooperate with the government and testify against the present client.' " *Johnson* at ¶ 91, quoting *United States v. Alvarez*, 2010 U.S. Dist. LEXIS 125489, *12 (S.D. Fla. Nov. 16, 2010). *See also Hackney* at ¶ 16. This is because "[t]he potential for conflict arises especially in the context of cross-examination, as defense counsel's 'most important function' during a criminal trial is to 'vigorously cross-examine the government's witness.' " *Johnson* at ¶ 91, quoting *Falzone* at 1271, and citing *United States v. Moscony*, 927 F.2d 742, 750 (3d Cir. 1991) (" 'Conflicts of interest arise whenever an attorney's loyalties are divided . . . and an attorney who cross-examines former clients inherently encounters divided loyalties.' "). "Further, 'there need not be a "substantial relationship" between the subject matter of the prior representation and the issues in the present case

before disqualification is warranted.' " *Johnson* at ¶ 91, quoting *Falzone* at 1275.  "Rather, '[a]ll that is required is that the interest of the defendant potentially conflicts with the interest of the former client.' " *Johnson* at ¶ 91, quoting *Falzone* at 1275.

**{¶ 23}** In this case, the undisputed evidence established that Mr. Johnson's trial counsel, attorney Jeffrey Basnett, had previously represented Tony Pace (a.k.a. Isaah Napier) in Franklin C.P. No. 04CR-2733 while Mr. Basnett was employed by the Franklin County Public Defender's Office.  (*See* Mar. 17, 2023 Hearing Tr. at 5-7, 12-19.)  With the assistance of Mr. Basnett, Mr. Pace entered a plea of guilty to having a weapon while under disability in December 2004 and was sentenced to 11 months of incarceration in February 2005.  (*See* Mar. 17, 2023 Hearing Tr. at 12-13; June 24, 2022 Ex. I.)

**{¶ 24}** Mr. Basnett was appointed to represent Mr. Johnson in February 2008.  (*See* Feb. 14, 2008 Entry; Feb. 19, 2008 Notice of Appearance of Counsel.)  At that point, he was no longer employed by the public defender's office.  (*See* Mar. 17, 2023 Hearing Tr. at 19-20.)  Because Mr. Pace was, in colloquial terms, a "jail-house snitch," he was "a late addition to the prosecution['s] witness list."  (Appellant's Brief at 6.)  Indeed, Mr. Pace claimed that, while incarcerated together, Mr. Johnson confided in him about killing Mr. Willis in December 2007.  (*See* Apr. 28, 2008 Tr. Vol. V at 550-51, 570.)  Though, on review of the record, it is unclear precisely when Mr. Pace shared this information with the state or when the state disclosed Mr. Pace as a potential witness against Mr. Johnson.

**{¶ 25}** At the time of Mr. Johnson's April 2008 trial, Mr. Pace was in custody pending sentencing for a federal drug conspiracy case.  (*See* Tr. Vol. V at 544-51, 567-69.)  Mr. Pace testified that he and Mr. Johnson were affiliated with the same gang and came into contact at the local jail after Mr. Pace was arrested in July 2007.  (*See* Tr. Vol. V at 548-55, 568-70.)  Mr. Pace claimed that, in December 2007, Mr. Johnson told him that "he had intention to kill [Mr. Willis] went to Nelson Park [Apartments] to go do some drug activities, and when he saw [Mr. Willis], he started shooting him."  (Tr. Vol. V at 551.)  Mr. Pace explained that members of the Bloods had allegedly put out a "hit" on Mr. Willis because they believed he had stolen a kilogram of cocaine from a higher-ranking member of their gang.  (*See* Tr. Vol. V at 549-61.)  He also testified that Mr. Johnson was paid "about $25,000 or the equivalent of $25,000" for killing Mr. Willis.  (Tr. Vol. V at 575-77.)

{¶ 26} In his 2022 motion for a new trial, Mr. Johnson alleged that Mr. Basnett's 2004 representation of Mr. Pace "created a conflict of interest" that was not disclosed to Mr. Johnson prior to his 2008 trial, as required by Prof.Cond.R. 1.7(b).  (*See* June 23, 2022 Mot. at 2.)  Citing Prof.Cond.R. 1.7(a)(2), Mr. Johnson argued that Mr. Basnett's prior representation of Mr. Pace "created a substantial risk that [Mr.] Basnett could not effectively cross-examine [Mr.] Pace about information that [Mr.] Basnett learned during his representation of [Mr.] Pace, even though that information was public record."  (*See* June 23, 2022 Mot. at 2-3.)

{¶ 27} Uncontroverted evidence established that Mr. Johnson was not aware of Mr. Basnett's prior representation of Mr. Pace until around 2022, when Mr. Johnson filed his motion for a new trial.  (*See* Mar. 17, 2023 Hearing Tr. at 46-47; June 24, 2022 Ex. A at ¶ 9.)  At the March 17, 2023 evidentiary hearing, Mr. Basnett acknowledged documents showing that he represented Mr. Pace in Franklin C.P. No. 04CR-2773 in his capacity as a public defender.   Mr. Basnett testified, however, that he did not disclose the conflict of interest to Mr. Johnson or the trial court in 2008 because he did not recognize Mr. Pace at the time of trial and did not remember representing Mr. Pace until Mr. Johnson filed his motion for a new trial in 2022.  And, nothing in the record before us suggests Mr. Pace recognized Mr. Basnett or otherwise acted as though he knew who Mr. Basnett was when he testified against Mr. Johnson in 2008.  It follows, then, that neither Mr. Pace nor Mr. Johnson signed written waivers regarding this conflict prior to Mr. Johnson's trial.

{¶ 28}  Under these facts and circumstances, we find that Mr. Basnett's former representation of Mr. Pace created a serious potential for conflict when Mr. Pace became a current witness in the case against Mr. Johnson.

### 2. Res judicata does not bar consideration of Mr. Johnson's conflict-of-interest claim.

{¶ 29} The trial court did not address the merits of whether Mr. Basnett's prior and undisclosed representation of Mr. Pace warranted a new trial.  Instead, the court found that because Mr. Johnson raised claims of ineffective assistance of counsel on direct appeal to this court—which we rejected in *Johnson I*—res judicata barred the court from "revisit[ing] the issue again in the context of a new trial." (Aug. 19, 2024 Decision and Entry at 3.)

{¶ 30} "The doctrine of res judicata bars someone from raising a claim that could have been raised and litigated in a prior proceeding." *State v. Blanton*, 2022-Ohio-3985, ¶ 2, citing *State v. Perry*, 10 Ohio St.2d 175, 180 (1967). Thus, a court reviewing a petition for post-conviction relief generally may not decide a claim that could have been presented at trial and raised on direct appeal. *See id.* However, the Supreme Court of Ohio has recognized an exception to that rule in the limited context of post-conviction ineffective assistance of counsel claims. Specifically, the court has held that res judicata does not bar consideration of a post-conviction ineffective assistance of counsel claim when either (1) the petitioner had the same attorney at trial and on appeal, or (2) the petitioner must rely on evidence outside the trial record to establish his claim for relief. *Blanton* at ¶ 2, citing *State v. Cole*, 2 Ohio St.3d 112, 113-14 (1982). This is because "[p]ostconviction-relief petitions raising claims of ineffective assistance of counsel pose unique challenges." *Blanton* at ¶ 29. Indeed, "criminal defendants rely on their trial counsel to develop the trial record," so "it is often the case that counsel's failures in representation are not preserved in the record." *Blanton* at ¶ 29.

{¶ 31} In *Johnson I*, Mr. Johnson alleged his trial counsel was ineffective in several regards, including failing to object to the removal of the self-defense jury instruction and failing to object to the admission of various types of evidence. *See Johnson I* at ¶ 58. Mr. Johnson did not take issue with trial counsel's cross-examination of Mr. Pace in his direct appeal. Of course, since Mr. Johnson did not become aware of Mr. Basnett's prior representation of Mr. Pace until nearly a decade *after* his trial concluded, Mr. Johnson did not have a basis in 2008 or 2009—when his direct appeal was briefed and argued to this court—to present an ineffective assistance of counsel claim based on Mr. Basnett's failure to disclose a purported conflict of interest. And, even if Mr. Johnson had learned about Mr. Basnett's potential conflict during the pendency of his direct appeal, Mr. Johnson could only seek relief through a post-conviction motion since evidence about Mr. Basnett's prior representation of Mr. Pace and potential conflict would not be included in the trial record before us in his direct appeal.

{¶ 32} To be sure, the trial court concluded that a hearing on Mr. Johnson's June 2022 delayed motion for a new trial was warranted. In that motion, Mr. Johnson alleged a new trial was necessary in light of newly discovered evidence of "a structural conflict of

interest involving [Mr. Johnson's] trial counsel who it was recently learned represented Mr. Tony Pace, the jailhouse snitch who was the primary witness against [Mr. Johnson] in this case." (June 23, 2022 Mot. at 1.) After conducting a hearing in November 2022, the court granted Mr. Johnson leave to file his motion for a new trial and conducted evidentiary hearings on that motion in March and May 2023. Had evidence of Mr. Basnett's conflict been included in the record that was before this court in connection with Mr. Johnson's 2008/2009 direct appeal, there would have been no basis or need for the trial court to receive additional evidence on this matter through post-conviction proceedings.

{¶ 33} Under the facts and circumstances presented in this case, we therefore find that res judicata did not bar consideration of Mr. Johnson's motion for a new trial based on his conflict of interest claim. As such, we agree the trial court erred in denying the motion on the basis of res judicata. Notwithstanding this error, we find there is another reason to affirm the judgment of the trial court. *See*, *e.g.*, *State v. Bridges*, 2015-Ohio-4480, ¶ 20 (10th Dist.) (affirming trial court decision "albeit it for a different reason than the one articulated by the trial court"); *White v. Mt. Carmel Med. Ctr.*, 2002-Ohio-6446, ¶ 30 (10th Dist.) ("[t]his court is permitted to affirm a trial court's decision on different grounds"); *Joyce v. Gen. Motors Corp.*, 49 Ohio St.3d 93, 96 (1990) (noting an appellate court must affirm the judgment on review if that judgment is legally correct on other grounds, as any error is not prejudicial in view of the correct judgment the trial court reached).

### 3. The trial court did not abuse its discretion in denying Mr. Johnson's motion for a new trial.

{¶ 34} Although the trial court couched its basis for denying Mr. Johnson's motion for a new trial in terms of res judicata, on review of the record before us, we find, instead, that the motion for a new trial should have been denied because Mr. Johnson failed to show his conflict of interest claim entitled him to relief under Crim.R. 33(A)(6).

{¶ 35} To establish a Sixth Amendment violation for a conflict of interest, a defendant raising a post-trial ineffective assistance of counsel claim "must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler*, 446 U.S. at 348. *See also Strickland v. Washington*, 466 U.S. 668, 692 (1984). While "it is reasonable for the criminal justice system to maintain a fairly rigid rule of presumed prejudice for conflicts of interest," *Strickland* at 692, the mere "possibility of conflict is

insufficient to impugn a criminal conviction," *Cuyler* at 350. A court will presume prejudice only if the defendant "demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest ***adversely affected his lawyer's performance*.' " (Emphasis added.) *Strickland* at 692, quoting *Cuyler* at 350, 348.

{¶ 36} This standard has been adopted in Ohio. An appellant establishes a claim of ineffective assistance of counsel when he demonstrates that an "actual" conflict of interest adversely affected his counsel's performance. *See, e.g., State v. Keith*, 79 Ohio St.3d 514, 535 (1997), citing *Cuyler* at 348. *See also State v. Peoples*, 2003-Ohio-4680, ¶ 37 (10th Dist.), quoting *State v. Getsy*, 84 Ohio St.3d 180, 187 (1998).

{¶ 37} "In order to show such a conflict, a defendant must 'point to specific instances in the record to suggest an actual conflict or impairment of [his] interests.' " (Internal quotation omitted.) *State v. Jackson*, 2015-Ohio-4356, ¶ 13 (9th Dist.), quoting *United States v. Hall*, 200 F.3d 962, 965-66 (6th Cir. 2000), quoting *Thomas v. Foltz*, 818 F.2d 476, 481 (6th Cir. 1987). An adverse effect is established where the defendant provides " 'some plausible alternative defense strategy or tactic [that] could have been pursued, but was not because of the actual conflict impairing counsel's performance.' " *Jackson* at ¶ 13, quoting *Perillo v. Johnson*, 205 F.3d 775, 781 (5th Cir. 2000), and citing *State v. Gillard*, 78 Ohio St.3d 548, 553 (1997). "While it is not necessary to prove that the defense theory would have been successful, it is necessary to show that the alternative theory was viable." *Jackson* at ¶ 13, citing *Gillard* at 553. Further, a defendant alleging a conflict of interest claim " ' "must establish that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests." ' " *Jackson* at ¶ 13, quoting *Gillard* at 553, quoting *United States v. Fahey*, 769 F.2d 829, 836 (1st Cir. 1985).

{¶ 38} Although Mr. Johnson does not dispute that Mr. Basnett did not recall previously representing Mr. Pace at the time of Mr. Johnson's trial in 2008, he nonetheless maintains that Mr. Basnett's prior representation of Mr. Pace impacted his right to the assistance of effective and conflict-free counsel. Ultimately, we find that contention unpersuasive.

{¶ 39} At trial, the state questioned Mr. Pace about his prior criminal convictions for drug possession, abduction, falsification, and having a weapon while under disability. (*See* Tr. Vol. V at 546.) On appeal, Mr. Johnson takes issue with Mr. Basnett's failure to

cross-examine Mr. Pace about "his long history of state court convictions and related acts of dishonesty which [Mr.] Basnett [would have] learned about during his representation of [Mr.] Pace." (Appellant's Brief at 5.) More broadly, Mr. Johnson argues that Mr. Basnett's prior representation of Mr. Pace created a conflict of interest in that Mr. Basnett's loyalties to his former client were incompatible with his obligation to zealously represent his current client. (*See* Appellant's Brief at 16-17, quoting *Moscony*, 927 F.2d at 750 (observing that " 'an attorney who cross-examines former clients inherently encounters divided loyalties' ").) Mr. Johnson asserts that, because he was charged with aggravated murder based on prior calculation and design, Mr. Basnett's "prior relationship with what was the key witness as to the motive aspect of the murder clearly implicated [his] right to a fair trial." (Appellant's Brief at 19.)

{¶ 40} Again, there is no evidence that Mr. Basnett knew, at the time of Mr. Johnson's 2008 trial, that a conflict of interest existed. It stands to reason that, "[w]ithout knowledge of the supposed conflict, trial counsel's performance could not have been impacted by the conflict." *State v. Dye*, 2021-Ohio-207, ¶ 62 (8th Dist.). To be sure, other than broadly suggesting a more robust cross-examination could have been pursued, Mr. Johnson has not pointed to any plausible defense strategy or tactic that was not pursued due to an actual conflict impairing his trial counsel's performance.

{¶ 41} Further, nothing in the record before us suggests Mr. Basnett's prior representation of Mr. Pace, unknown to Mr. Basnett at the time of Mr. Johnson's trial, adversely affected Mr. Basnett's representation of Mr. Johnson. Mr. Johnson was indicted with the aggravated murder of Richard Willis in violation of R.C. 2903.01(A). Under that provision, the state was required to prove that Mr. Johnson purposely, and with prior calculation and design, killed Mr. Willis. Mr. Pace's testimony—claiming that Mr. Johnson told him he intended to kill Mr. Willis and was paid for doing so—was particularly relevant to the "prior calculation and design" element of that offense. But the jury did not find Mr. Johnson guilty of committing aggravated murder. Instead, it convicted Mr. Johnson of murder, a lesser-included offense, under R.C. 2903.02(A). That provision only required the state to prove Mr. Johnson purposely killed Mr. Willis. Thus, while Mr. Pace may have been the state's "key witness" as to the prior calculation and design element of the aggravated murder offense, the jury did not convict Mr. Johnson of that offense. Therefore,

we cannot say Mr. Pace's testimony influenced the jury's verdict, and we have no basis to conclude that Mr. Basnett's prior representation of Mr. Pace had any appreciable bearing on Mr. Johnson's conviction for purposeful murder.

{¶ 42} To convict Mr. Johnson of murder under R.C. 2903.02(A), the state had to prove Mr. Johnson purposely caused the death of Mr. Willis. "A person acts purposely when it is the person's specific intention to cause a certain result." R.C. 2901.22(A). A person's intent may be inferred from all the surrounding facts and circumstances of the crime. *See, e.g., State v. Herring*, 94 Ohio St.3d 246, 266 (2002). Ms. Hogg, a resident of the apartment complex, testified that, on November 9, 2005, she saw Mr. Johnson pull into the parking lot of Nelson Park Apartments, back into a space to park, exit his vehicle, and shoot in the direction of Mr. Willis. (Tr. Vol. V at 462-66.) *See Johnson I* at ¶ 5, 49. Mr. White likewise testified about observing Mr. Johnson drive into the apartment complex's parking lot, back into a parking spot, and exit his vehicle with a gun. (Apr. 23, 2008 Tr. Vol. III at 243-47, 284-85.) *See Johnson I* at ¶ 6, 49. Mr. White specifically described seeing Mr. Johnson shoot in the direction of Mr. Willis. (Tr. Vol. III at 246-47, 252, 284-85.) *See Johnson I* at ¶ 6, 49.

{¶ 43} On direct appeal, Mr. Johnson challenged the sufficiency and manifest weight of the evidence supporting his purposeful murder conviction. *See Johnson I* at ¶ 48-57. In finding no merit to either challenge, we cited to the eyewitness testimony of Ms. Hogg and Mr. White identifying Mr. Johnson as the person who pulled out a firearm and began shooting in the direction of Mr. Willis. *See Johnson I* at ¶ 49. We also noted that neither Ms. Hogg nor Mr. White saw Mr. Johnson and Mr. Willis struggle over a gun, contrary to Mr. Johnson's testimony otherwise and denial of intentionally shooting Mr. Willis. *See Johnson I* at ¶ 35, 49. True, we also referenced Mr. Pace's testimony about Mr. Johnson allegedly "confess[ing] that he purposely shot [Mr.] Willis." *Johnson I* at ¶ 49. But, even excluding that testimony, the testimony of the two eyewitnesses, Ms. Hogg and Mr. White, if believed, is sufficient to prove that Mr. Johnson purposely caused Mr. Willis's death.

{¶ 44} Although Mr. Johnson contended in his direct appeal that his version of events—claiming Mr. Willis was accidentally shot while Mr. Johnson was struggling with Mr. Willis over his gun, *Johnson I* at ¶ 35, 38-40—was more credible than the version

described by Mr. White and Ms. Hogg, we found that argument unavailing. *See Johnson I* at ¶ 52-54. We further observed that "even if the jury did not believe [Mr.] Pace's testimony that [Mr. Johnson] confessed to the premeditated murder of [Mr.] Willis, that does not render [Mr. Johnson's] conviction of murder less reliable given the eyewitness testimony of [Ms.] Hogg and [Mr.] White." *Johnson I* at ¶ 54.

{¶ 45} Thus, contrary to Mr. Johnson's argument otherwise—and in light of Mr. Basnett's uncontroverted testimony that he had no recollection of representing Mr. Pace several years before Mr. Johnson's trial—we find no basis to conclude that Mr. Johnson was adversely affected by Mr. Basnett's prior representation of Mr. Pace. Moreover, the new conflict of interest evidence presented by Mr. Johnson in support of his motion for a new trial does not disclose a strong probability that a new trial on the aggravated murder charge—of which Mr. Johnson was **not convicted**—or its lesser-included offense of murder—of which the jury found Mr. Johnson guilty—would yield a different result. *See Petro*, 148 Ohio St. at 508. As such, we conclude Mr. Johnson has failed to present substantive grounds warranting a new trial under Crim.R. 33.

{¶ 46} For these reasons, we cannot say the trial court abused its discretion in denying Mr. Johnson's motion for a new trial. Accordingly, we overrule Mr. Johnson's first and second assignments of error.

## III. CONCLUSION

{¶ 47} Having overruled Mr. Johnson's two assignments of error, we affirm the August 19, 2024 judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

JAMISON, P.J., and LELAND, J., concur.

———————————